Soter Helias v. Commissioner.
Helias v. Commissioner
Docket No. 1864-62.
United States Tax Court
T.C. Memo 1965-85; 1965 Tax Ct. Memo LEXIS 245; 24 T.C.M. (CCH) 447; T.C.M. (RIA) 65085; April 7, 1965
*245 Petitioner failed to keep written records of his tip income. Respondent reconstructed such income by use of formulas. Held: (1) The amounts of tip income are redetermined under the Cohan rule. (2) Petitioner was negligent in failing to maintain written records of tip income; the 5 percent addition to the tax under section 6653(a) is sustained. Soter Helias, pro se. Lee A. Kamp, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined income tax deficiencies and 5 percent additions for negligence *246 to the taxes under section 6653(a), 1954 Code, for the calendar years 1957, 1958, and 1959, as follows: Year
Deficiency
Sec. 6653(a)
1957
$ 380.65
$19.03
1958
703.12
35.16
1959
809.33
40.47
$1,893.10
$94.66
The questions are whether petitioner received income from tips in larger sums than he reported on his returns and, if so, the amounts thereof; and whether a 5 percent addition to tax for negligence should be imposed for each year under section 6653(a), 1954 Code. Findings of Fact Petitioner filed a separate return for each year with the district director of internal revenue for the Manhattan District of New York City. During each of the taxable years he resided in New York City. Petitioner was born in Greece. He came to the United States when he was 19 years old. He attended high school in Greece for 2 years. He was 60 years old in 1957. He was ill and unemployed during part of 1964. Petitioner is a waiter and member of the Waiters' Union. During 1957, he was employed for 10 weeks at the Circle Cafe on Columbus Circle (operated by L. Papson); and he also was employed for about 20 weeks during the period June 1 to December 31, as a substitute *247 waiter at the Latin Quarter, 240 East 48 Street. During 1958 and 1959, he was employed only at the Latin Quarter restaurant and became a steady, substitute waiter taking the places of regular waiters when they were absent. Petitioner did not keep any written records of his tip income. On each return, he included in his gross income an estimated amount of tips. Because petitioner did not have any records of the amounts of his tips, respondent reconstructed the amount for each year under a formula which he used, in general, in determining the annual amounts of tips received by waiters employed during the years 1957-1959 by the Latin Quarter. He determined that tips at the Circle Cafe represented 100 percent of wages. Respondent did not make his determinations on the basis of records kept by petitioner's employers of his actual sales of food and beverages. On his 1957 return, petitioner did not break down the $643 of estimated tip income to show his estimates of tips received at Circle Cafe and the Latin Quarter, respectively. Respondent did not make a similar breakdown in the deficiency notice, but his determination is that Circle Cafe tips were $483.60, and Latin Quarter tips were *248 $2,078.50. The following schedule sets forth for each year wages, tips reported on the returns, and respondent's determinations of the total amounts of tips and the unreported amounts thereof: Tips Per
Tips Per
Unreported
Year
Employer
Wages
Returns
Respondent
Tips
1957
Circle Cafe
$ 483.60
*
$ 483.60
Latin Quarter
691.50
$ 643 *
2,078.50
$1,175.10
$2,562.10
$1,919.10
1958
Lahin Quarter
1,421.00
900
4,263.00
3,363.00
1959
Latin Quarter
1,469.22
1,000
4,293.58
3,293.00
Petitioner served lunch and dinner at the Circle Cafe. He worked until about 9:30 P.M. Customers of that restaurant did not give large tips. The Latin Quarter is one of the better class night clubs in New York City. It is a cabaret type of restaurant. A floor show is presented. On Saturday nights the show is presented 3 times during the evening, and there are 3 sittings of customers. On other nights the show is given twice, and there are 2 sittings. There is a minimum cover charge of $7 per person and prices are relatively high. Petitioner's *249 hours of work varied. He might work from 6:15 P.M. to 11 P.M. on slack nights, and from 6:15 P.M. to 3 A.M. on good nights, if he was called upon to work. Under the rules of Waiters' Union, the standard work week is 5 days a week, and during the years 1957 through 1959 the annual vacation period, without pay, was 2 weeks. The Latin Quarter's system for engaging and assigning waiters each night was as follows: It had a crew in the taxable years of about 40 available waiters. The number engaged each evening was decided by the management, and depended upon the day of the week and the number of customers expected each night. The largest amount of business is on Saturday; the next best night is Friday. Other nights, business may be medium or slack. The restaurant is divided into front and rear areas, the front area being the best and the most profitable for the waiters. On slack nights, the rear area is not used. Not all waiters reporting for duty on an evening are engaged. Only the number required remain; the rest are dismissed immediately and do not receive any wages for that night. Since a substitute waiter takes the place of a regular one who is absent, his engagements are dependent *250 uponthe availability or absence of others. Waiters work in a team of two. Each waiter must work during an evening at the station to which he is assigned and cannot move to another station. A station consists of 5 tables, 3 of which accommodate 4 persons each, and 2 of which accommodate 2 persons each, so that if each table is fully occupied at a sitting, 16 persons are served. Or, a station in the front area may include 6 tables. The assignments to stations and to either the front or rear area are made each evening by spinning a wheel on a board to which are attached the names of the waiters engaged for the evening. Under the system of making location assignments by spinning a wheel, there is an element of chance in whether a waiter frequently receives either a good or a poor location, from the viewpoint of receiving large tips; and the system does not assure a consistent pattern of rotating waiters throughout all of the restaurant area and to all of the stations. Moreover, the captain or captains, who take customers to tables, have discretion in the matter of taking the best spenders to the best locations. There is no fixed rate of tip at the Latin Quarter. There is no written *251 record made by the restaurant of the amount of the tip paid by the cash customers directly to the waiters, and the amount of the tip depends upon the satisfaction and generosity of the customers. Some of them, from out-of-town, for example, may be conservative in the size of the tip. There is a tendency among the customers who are seated in the rear area to leave smaller tips than those seated in the front area and at the best locations. The tips received by an individual waiter vary in the total amount each evening depending upon several factors, including the following: (1) The number of hours worked per night, which depends upon when the waiter is excused and sent home. If business is very poor, he may be excused before 11 P.M., and although he receives his wages for the evening, his opportunity for receiving tips is curtailed by the reduction in the number of hours worked. If he works after 11 P.M. and as late as 3 A.M., his opportunity for receiving tips is greater. (2) Whether he works on Friday or Saturday night, and whether he works on evenings when business is slack or poor. (3) The particular station and the area to which he is assigned. (4) The variations in the amounts *252 of tips left by the respective patrons. (5) Variations in the number of people seated at the tables for 4 persons; there were not always 4 customers at a table. The Latin Quarter waiters are required to pay 15 percent of their tips to the bus boys. Petitioner paid 15 percent of his tips to bus boys in each year. During 1957, 1958, and 1959, petitioner, as a substitute waiter, usually worked only 3 or 4 nights a week. About once a month he may have worked all of the 5 days of the work-week. During 1957, 1958, and 1959, petitioner received wages at the Latin Quarter at the rate of $38 per week for a 5-day week. On that basis, his wages per day amounted to about $7.60. During 1957, 1958, and 1959, the total number of days of work of petitioner at the Latin Quarter was 90 days, 186 days, and 193 days, respectively. (The above numbers of days of work are established by petitioner's testimony and by dividing wages of $7.60 per day into the total amount of wages received in each year from the Latin Quarter, namely, $691.50 in 1957, $1,421 in 1958, and $1,469.22 in 1959.) Respondent reconstructed the total amount of petitioner's tips in 1957 at Circle Cafe by applying the factor *253 of 100 percent to his wages, and determined that tips equalled the amount of wages. He reconstructed the amounts of tips received at the Latin Quarter by applying the following formula: He ascertained from the employer's books the net amount for each year, 1957, 1958, and 1959, of the tip-producing sales of food and beverages, after excluding the Federal excise tax and the New York City sales tax. He concluded that the average tip left by customers was 15 percent and that after the payments of part of the tips to the bus boys, the average tip received by all waiters was 12.5 percent of the customer's bill. He applied 12.5 percent to the total amount of the net tip-producing sales for each year and obtained a resulting total sum representing total tips paid to all waiters during each year. This resulting figure of total tips was then divided by the total amount of wages paid to all waiters during the year to arrive at a percentage of tips to wages in each year. These percentages were then reduced (or rounded off) so that for each of the years 1957, 1958, and 1959 the percentage of tips to wages was 300 percent. That is, respondent determined that the estimated, correct tip income (under *254 the formula) represented or was equal to 300 percent of each waiter's annual wages. Accordingly, respondent determined that in each of the taxable years petitioner's estimated tip income at the Latin Quarter was an amount which equalled 300 percent of his total wages for each year. The total amount of tips which petitioner received each night varied. On some nights when business was very dull, he received only his wages and no tips at all; i.e., he was hired for the evening but did not wait on any customers. The total amount of tips received during a night depended on the location of the station to which petitioner was assigned, in the front or the rear; the number of customers served and how many sat at a table; the night of the week, Friday, Saturday, or some other night, and whether business was very good, fair or poor. At the Latin Quarter, each team of two waiters working at a station divides the net amount of tips between themselves at the end of each work day or night. Ultimate Findings of Fact Petitioner's total tip income in each year and the amounts of the unreported tips were as follows: Total
Unre-
Tips De-
Tips Re-
ported
Year
Employer
termined
ported
Tips
1957
Circle
$ 350
Latin Quarter
1,200
$1,550
$ 643
$ 907
1958
Latin Quarter
2,100
900
1,200
1959
Latin Quarter
2,100
1,000
1,100
*255 Petitioner's failure to keep written records of tips received in each year was negligent; part of the underpayment of tax for each year was due to negligence. Section 6653, 1954 Code. Opinion Tips are compensation for services and earned income. They must be included in gross income. Section 61(a) 1954 (C.A. 9, 1949), affirming ; (C.A. 7, 1962), affirming a Memorandum Opinion of this Court, certiorari denied ; . The question to be determined is the total amount of petitioner's tip income in 1957, 1958, and 1959. The respondent made a determination of the total amount of estimated tip income that petitioner received in each year. He determined that petitioner had underestimated his total tip income for each year. Under the law, respondent's determinations are presumptively correct, and the petitioner had the burden of proving errors in each of the determinations. . In effect, petitioner contends that respondent's *256 determinations of the amount of his tips for each year were arbitrary and excessive. Petitioner produced some evidence which is entitled to receive consideration. Petitioner testified that he was a substitute waiter; i.e., he was hired to take the place of an absent waiter. If some waiter was present on the good nights and absent on the poor nights, petitioner would be hired on the poor nights and would not have the opportunity of working on the best and better nights. Thus, petitioner testified that during many nights when he was hired, he did not take home "a penny" in tips; that is, he did not wait on any customers and he received only his wages for the night. He testified that on some nights his tips were as low as from $1 to $5; and on better nights his tips totaled only $10; that he seldom was hired to work a 5-day week; that he usually was hired to work only 3 or 4 days a week; and was hired to work about 180 days a year. His position is that his total tip income could not possibly be and was not in a sum equal to 300 percent of his wages in a year. He testified that at the Latin Quarter he paid 15 percent of his tips to bus boys. He also testified that at the Circle Cafe tips *257 were small, and his position is that during the time he worked there in 1957, his total tip income was not equal to his total wages. This Court held in (No. 65, March 18, 1965) that the formula which respondent uses in reconstructing and determining the total tip income of waiters for a year is basically valid. That case is controlling here. However, as in the Meneguzzo case, we find that some adjustment is required in applying the formula to the facts here. Essentially, the adjustment, with respect to tip income received at the Latin Quarter, relates to respondent's percentage of the net amount of tips received by each waiter after payments to bus boys. Respondent made some adjustment, but we conclude that a further adjustment must be made in this case. We have applied the rule of , and made as close an approximation on the basis of the evidence as can be made of the total amount of petitioner's tip income in each year and at each place of employment. Petitioner was unable to prove that he did not receive more tips in each year than he reported in his return. His problem is due to his *258 failure to keep written records of his tips. The Court is obliged in this situation to conclude that for each year petitioner received more tips than was reported on each return, as is set out in the findings. Petitioner was extremely negligent in failing to keep written records of the exact amount of tips he received. In similar cases, the 5 percent addition to the tax (a penalty) has been sustained by this Court. . The taxpayer must bear the consequences of his own negligence. An addition to the tax for each year under section 6653(a) is correct in this case. In general, if a taxpayer fails to keep written, accurate records of the amounts of his tips (by day, week, month, and year), he cannot complain if the Commissioner reconstructs his tip income by using a reasonable formula, and he runs the risk that the Commissioner will do so. Where no records are kept, no method can be found by which a computation can be made of the exact amount of tips actually received. The law does not require the Commissioner to make a reconstruction that results in an exact amount. . In the future, *259 petitioner must keep a written, accurate, daily record of his tip income which will enable him to report in his return, exactly, the total amount of tips received during each year. Tips are voluntary payments by customers for satisfactory service and are earned income. Since tips are usually a cash payment directly to the recipient, records of the employers do not now show the amounts of such payments. The problem is burdensome to both the Commissioner and taxpayers and should be solved. Courts cannot solve the problem satisfactorily. Usually restaurant checks are printed with a space to write in the sales tax. They could be printed with another space for the tip, to be filled in by the customer, which would provide the written record which is required by the Commissioner for tax purposes; but waiters would still be required to keep their own written records of tip income. Decision will be entered under Rule 50. Footnotes
*. Petitioner did not show separate amounts for estimated tips at Circle Cafe and Latin Quarter.↩